## BOLTIS H. LEGEE v. PAUL D. BURBANK.

A debtor, who has assigned his property for the benefit of his creditors, although interested in the event of a suit prosecuted by his assignee in behalf of the assigned estate, has not that direct and immediate interest which renders him-incompetent to testify on behalf of the assignee, within the meaning of § 399 of the Code of Procedure.(a)

---

(a) It will be useful to publish, as a note to this case, the following report of a decision rendered in this court, at a special term, held in July, 1852:

### BEAN and another v. CANNING and another.

In an action brought upon an acceptance of a bill of exchange, drawn upon a firm consisting of three members at the time of the acceptance, but since dissolved, one of the co-partners, who is not joined as defendant in the action, is a competent witness for the other two co-partners to defeat a recovery.

The suit in such case is not defended for the immediate benefit of the witness, within the meaning of section 399 of the Code.

It seems, that where the judgment does not, by its own force, unaided by any additional or extrinsic fact, entitle the plaintiff to have property of the proposed witness, either legal or equitable, applied in satisfaction, and no execution on the judgment can be issued against him, nor against any property, right, or interest to which he has the legal or equitable title, the witness is not incompetent to testify on behalf of the defendants.

If, after a motion for a nonsuit, founded on a defect in the plaintiff's proofs, the defendant supplies the deficiency by his own examination of witnesses, he cures the defect and virtually waives his exception.

When the endorsees of a bill of exchange advance money for the express purpose of taking up the bill, and the money is forwarded through the drawers of the bill to the agent of the acceptors, and the bill is by him taken up at the banker's and returned to the endorsees, who sue the acceptors thereon, it is proper to submit to the jury the question whether, under all the circumstances proved, the money was a loan to the drawers, and applied in *payment* of the bill, to the exoneration of the acceptors, or a withdrawal of the bill, with a view to pursue it as a valid security in the hands of the plaintiffs. Such a transaction does not necessarily amount to a payment and discharge of the acceptance.

THE plaintiffs brought their action, as endorsees against acceptors, upon two bills of exchange, drawn by John Henson & Co. upon Pearson, Canning & Co., in favor of the drawees, by the latter endorsed to the plaintiffs, and by the drawees, in the summer of 1844, accepted.

Legee *v.* Burbank.

THIS was an action in the nature of trover, to recover the value of a set of four-horse stage harness, levied upon by the

On the trial, the plaintiffs proved that the two defendants sued, together with A. W. Pearson, composed the acceptors' firm of Pearson, Canning & Co.; that the acceptance was in the handwriting of A. W. Pearson, and that the co-partnership continued from 1839 to 1844.

It also appeared, that John Henson & Co. and the plaintiffs had mutual dealings—the plaintiffs being in the habit of lending money to that firm from time to time, and receiving cash, notes and bills on account, in payment—and that the bills in question were received by the plaintiffs on account. That at the maturity of the bills, the plaintiffs furnished to John Henson & Co. the precise amount of these bills, respectively, for the express purpose of taking up the bills, and the same was forwarded, through the defendants' agents, to the bankers in London, where the bills were payable, and they were returned to the plaintiffs.

Upon this state of the proofs, the defendants moved for a nonsuit, on. the grounds—1st. That it did not appear that the co-partnership of Pearson, Canning & Co. was in existence when the bills were accepted. 2d. That from the facts above stated, the legal inference was, that the advance by the plaintiffs, at the maturity of the bills, was loaned by the plaintiffs to John Henson & Co., or, at all events, that the bills were paid and extinguished.

The motion being denied, the defendants duly excepted, and thereupon called a witness, who testified that, according to his information, the firm of Pearson, Canning & Co. was dissolved in 1845.

The defendants then called as a witness, A. W. Pearson, their co-partner at the time of the acceptance, and by whom, in fact, the acceptance was written. · The plaintiffs objected to the proposed witness as incompetent, because the suit was defended for his immediate benefit; and the objection was sustained. To this ruling the defendants also excepted.

A verdict was taken for the plaintiffs, subject to the opinion of the court, with leave to the defendants to move for a nonsuit or a new trial.

*Augustus F. Smith*, for the plaintiffs.

*Jesse W. Benedict*, for the defendants.

WOODRUFF, J.—Whether there was or was not sufficient proof of the co-partnership of the defendants, at the time the motion for a nonsuit was made, is not material, since the defendant, by his own examination of the witness, Ward, supplied the deficiency. Ward testified that his information was, that the co-partnership of the defendants was dissolved in 1845, which was subsequent to the acceptance of the bills in question. Whether the witness' information was or was not competent evidence, it was given by the defendant without objection, and he cannot now say that the co-partnership, which had been before

defendant, under an execution against a third party. The plaintiff claimed as the assignee of the debtor, under a general

proved to exist from 1839 to 1844, was not, by this evidence, shown to have endured through the last named year.

The other ground upon which the defendant moved for a nonsuit, viz., that the bills had been paid, or that the evidence raised that presumption, was, also, in my judgment, properly overruled. The evidence of John Pearson showed that the plaintiffs were the holders of the bills before they became due. They had received them from the payee on account of moneys due to them. They furnished the money with which to take up the bills, and received the bills again into their own possession. The mere fact that the bankers placed the same mark on bills taken up by the holder which they would have placed there if the acceptor had paid them, is not conclusive. The evidence is, that the bankers in England make no difference, and that in England there is no such thing as "retiring a bill." By whatever name it may be called, there is a difference in law between the payment of a bill by the acceptor, and the taking up of a bill by the holder or other person, by the assent of drawer and acceptor, so as to temporarily withdraw it. In withdrawing this bill from the banker's hands, John Henson & Co. may be regarded as the plaintiffs' agents. The plaintiffs furnished the money for the express purpose of taking up these identical bills, which had before been paid to them on account. And if it was not the intent of all parties to the transaction to keep the bills alive as valid securities in their hands, why, it may be significantly asked, were the bills returned to them? Why were they not given up to the acceptors?

There was, undoubtedly, in the manner in which the transaction was conducted, some ground for insisting, as a matter of fact, that this money was a loan by the plaintiffs to John Henson & Co.; and had it been further proved that the defendants were merely accommodation acceptors, and that it was the duty of John Henson & Co. to provide the funds for this payment, the evidence would have been very strong that the plaintiffs relied on the responsibility of John Henson & Co., and advanced the money to enable John Henson & Co. to perform their duty toward these acceptors. But as the evidence was, the question whether this advance was in payment of the bills in exoneration of the acceptor's responsibility thereon, or a mere withdrawal from the banker's hands, with intent to preserve their vitality as securities for the plaintiffs' benefit, was a proper question for the jury. And I presume—as the charge is not contained in the case, and no exception was taken thereto—that this question was left to the jury, under proper instructions from the court.

The only remaining ground upon which the defendant objects to a judgment upon this verdict, and insists upon a new trial, is, that the court on the trial rejected the evidence of Arthur W. Pearson. It was proved that the firm of Pearson, Canning & Co. accepted the bills in question; that the proposed witness was a member of that firm when the bills were accepted; that the ac-

insolvent assignment, in trust for the benefit of creditors. On the trial, in the Fourth District Court, the assignor was

ceptance itself, in the name of the firm, was in his handwriting; and that the firm was dissolved in 1845, two years or thereabouts before this suit was commenced, and nearly six years before the time of the trial.

There can be no doubt that upon this proof the proposed witness was, *prima facie*, interested in the event of this suit, and would, for that reason, have been incompetent to testify under our former rules of evidence. But that alone is not now the test of competency. On the contrary, that mere pecuniary interest in the result shall not exclude a witness, is the express provision of section 398 of the Code. Formerly, the question was, Will the proposed witness gain or lose by the event? Now, the inquiry is, by the 399th section, Is the suit defended for his *immediate* benefit? In one sense, every suit is defended for the benefit of every person who is interested to defeat a recovery. But the legislature have thought proper to make the question whether his benefit will be *immediate* or not, the criterion. There is great difficulty in assigning to this language a precise meaning which shall furnish a clear guide in all cases. The word "immediate" would seem to be used in contradistinction to secondary and contingent. Hence, it has been held in England, under a similar law, and in this state, that one who indemnifies a defendant against the result, or against costs, is not excluded. (*Sage* v. *Robinson,* Eng. C. B., 12 Jur. 1,054; 1 Code Rep. 55, and cases on p. 56; *Farmers' and Mechanics' Bank* v. *Paddock,* 1 Code R. 81.) So of the bail for defendant. (*Wickes* v. *Farnum,* 1 Code R. 55.) So of a stockholder in a corporation. (*Washington Bank* v. *Palmer,* 2 Sandford Sup. Ct. R. 686.) And see cases there cited, and the like cases in principle. (*N. Y. and Erie Railroad Co.* v. *Cook,* Ib. p. 732; *Bank of Charleston* v. *Emeric,* Ib. 718,) in which last case the court say, that in respect to a witness for the plaintiff, section 399 only applies to a person into whose hands the money collected in the suit will necessarily go when received, or who might take it from the sheriff or the plaintiff's attorney as *his own,* and not where the money cannot *immediately,* though it may *ultimately,* go into his hands. (See, also, cases collected in Voorhies' edition of the Code, pp. 297, 298.) It may be difficult to express, in the form of a distinct proposition or definition, a rule which will apply to all cases. But, to my mind, it seems that as to a witness offered by a defendant, where the plaintiff cannot have execution of his judgment against the witness himself, nor against property to which he has the legal or equitable title, the suit cannot be said to be defended for his immediate benefit. Or perhaps it would be better to say, that where the judgment does not, by its own force, unaided by any additional or extrinsic fact, entitle the plaintiff to have property of the proposed witness in satisfaction, the witness is not incompetent; for if the plaintiff, in order to obtain such property of the witness, will be compelled not only to show the judgment, but also to show a liability arising out of some relation of the witness to the claim, which the judgment neither proves nor im-

produced as a witness for the plaintiff, and objected to, but the objection was overruled.

The plaintiff recovered judgment for $55, from which the defendant appealed.

*J. Cole,* for the appellant.

*J. M. Guiteau,* for the respondent.

BY THE COURT. WOODRUFF, J.—There was no error committed below in permitting the plaintiff's assignor to testify. The ground of objection to his testifying was not stated by the defendant on the trial, but it is now urged that the suit

---

plies, the benefit to the witness is not immediate, but contingent, or at most, only consequential.

In the present case, the plaintiffs can have no judgment against the proposed witness personally. They can issue no execution on the judgment against the two defendants sued, by which they can direct a levy upon the property of the witness, nor upon any interest of the witness in any property. The judgment can only be directly enforced against the two defendants sued. It is true that he is, *prima facie,* liable to contribute to their relief. But that only shows a *prima facie* interest, and this does not disqualify. To compel such contribution, a suit by the defendants will be necessary; and on that suit, where the witness will be a party having a right to be heard, and to produce witnesses, proofs may be given which will show that he is not liable for contribution. The firm was dissolved nearly six years before the trial, and if it were conceded that the defendants would have an immediate right to apply the firm property to the payment of the defendants, there is no evidence that they have any such joint property in their hands. If there were, it does not follow that their right to make such application is *incontrovertible.* The judgment herein does not, by its own force, determine the rights of the defendants and of this witness, between themselves.

I am constrained to conclude that, inasmuch as the plaintiffs cannot, by reason of any recovery herein, and upon that fact alone, collect the judgment out of any property, right or interest of the proposed witness, either legal or equitable, the action cannot be said to be defended for his immediate benefit. The plaintiffs cannot say that the judgment establishes the fact that either the witness or his property is liable for the amount recovered. That liability, if it exists, depends upon questions which are not now in issue between the parties.

Upon this ground, I think a new trial should be granted.

New trial ordered. The costs of the former trial and of the hearing hereon, to abide the event of the suit.

is prosecuted for his immediate benefit. Not so. He may be interested in having the property applied to the payment of his debts. But if the defence attempted, be founded in fact, a recovery here will leave him exposed to liability, to the same extent, for the debt, for the payment of which the defendant claims that the property has been taken in execution.

Be this as it may, he cannot control the suit, nor direct the disposition of the amount recovered. The benefit to result to him is only incidental. The money goes into the pocket of another.

The assignment to the plaintiff passed all of the assignor's property, and needed no particular specification to embrace the harness in question.

The proof in regard to the value of the harness, &c., if not very precise, is, we think, sufficient to sustain the finding. Some of the evidence is clearly so, and if we should conclude that upon the same evidence we would have assessed the damages at a few dollars less, it is not a case in which they are excessive, or which calls for a reduction of the amount.

Judgment affirmed.